347 So.2d 129 (1977)
R.R. WALDEN, As Property Appraiser of Hillsborough County, Florida, Appellant,
v.
A.L. TUTEN and Minnie Tuten, His Wife, Appellees.
No. 76-736.
District Court of Appeal of Florida, Second District.
June 8, 1977.
Rehearing Denied July 15, 1977.
Brooks P. Hoyt of Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellant.
John W. Puffer, III, of Shackleford, Farrior, Stallings & Evans, P.A., Tampa, and Clarence A. Boswell, Sr., of Boswell & Conner, Bartow, for appellees.
McNULTY, Judge.
This case involves the denial by appellant, as Property Appraiser of Hillsborough County, of a "green belt" assessment for the year 1974 of certain lands occupied by the appellees Tutens as lessees and used by them allegedly as a cattle ranch. The Tutens prevailed in a declaratory decree action in which the court determined that they were entitled to the "green belt" assessment sought and this appeal ensued. We reverse.
The undisputed operative facts are that since 1951 the Tutens had owned and occupied the land in question herein, a tract of approximately 1000 acres. The land had been continuously used by them as a cattle ranch and had been assessed as agricultural land during their ownership.
In January 1973, however, they sold a majority of the tract to the Barnett Bank of Naples as trustee for a group of investors comprising a Florida Land Trust. They retained approximately 100 acres for their current residence; but effective upon the date of the sale, they became lessees of *130 the entire tract sold.[1] The annual rental fee under the lease was a sum "equal to the amount of the taxes levied for that year" ($1,300 for 1973  thus the Tutens' interest in the "green belt" assessment) and the term of the lease has been extended from an original two-year term to 1983, with the provision nevertheless that it may be terminated by either party upon six-months notice. Additionally, the lease provided that it would terminate if the Tutens ceased to use the premises as a cattle ranch.
As of January 1, 1974, the relevant date for the taxable year in question in this case, the Tutens were in fact using the property as a "cattle ranch" operation. But we shall discuss this matter more fully hereinafter.
Most significantly, it is also uncontroverted that the purchase price of the land ($1,000,250) was much more than three times the agricultural assessment previously placed on it. Accordingly, in reliance on Section 193.461(4)(c), Florida Statutes (1973), the appellant Property Appraiser denied the Tutens' application for an agricultural assessment for the year 1974. That section provides as follows:
"(c) Sale of land for a purchase price which is three or more times the agricultural assessment placed on the land shall create a presumption that such land is not used primarily for bona fide agricultural purposes. Upon a showing of special circumstances by the landowner demonstrating that the land is to be continued in bona fide agriculture, this presumption may be rebutted." (Emphasis added.)
Most importantly, however, "bona fide agricultural purposes" as used therein is defined by a preceding subsection of Section 193.461, supra, i.e., subsection (3)(b), as "good faith commercial agricultural use of the land."
Additionally, this latter subsection (3)(b) further provides:
"... In determining whether the use of the land for agricultural purposes is bona fide, the following factors may be taken into consideration:
(1) The length of time the land has been so utilized;
(2) Whether the use has been continuous;
(3) The purchase price paid;
(4) Size, as it relates to specific agricultural use;
(5) Whether an indicated effort has been made to care sufficiently and adequately for the land in accordance with accepted commercial agricultural practices, including, without limitation, fertilizing, liming, tilling, mowing, reforesting, and other accepted agricultural practices;
(6) Whether such land is under lease and, if so, the effective length, terms and conditions of the lease; and
(7) Such other factors as may from time to time become applicable.
Obviously, given the presumption which undisputedly arises because of the high purchase price of the land, the question herein is whether the Tutens rebutted the presumption. Cognizant of Straughn v. K & K Land Management, Inc.,[2] in which our Supreme Court determined that the aforequoted seven criteria outlined in Section 193.461(3)(b), supra, were relevant on the question of whether the presumption is rebutted, the trial court herein found:
"(1) The land was used by the Tutens for over twenty years as owners, in the same way that they as lessees were using it January 1, 1974;
(2) The use has been continuous;
(3) The tract is certainly of a size to make it acceptable for this use;
(4) The land has continued to be cared for by the lessees in an acceptable manner;

*131 (5) The land was under lease as of January 1, 1974, for a two year period, terminating at the end of 1974, a lease which could be terminated by the lessor only if the lessees discontinued the use of the land for cattle operation."
He concluded therefrom that the presumption was rebutted.
We have no quarrel, really, with the conclusions of the trial judge insofar as they relate to an agricultural use of the property. In fact, prior to 1972 a bona fide agricultural use was indeed all that was required for entitlement to a "green belt" assessment.[3] But the aforequoted subsection (3)(b) of Section 193.461 was added to the statute by amendment in 1972[4] and, as quoted, now requires a "good faith commercial agricultural use" of the land in question. Where we think the trial judge went astray, therefore, was in his failure to determine whether the continuous agricultural use he found was a good faith commercial agricultural use as distinguished from a mere agricultural use; and, in truth, Straughn, supra, strongly suggests this distinction, though the point was not squarely before the court, when it commented:[5]
"... The rational presumption imposed by the legislature is that land purchased for three or more times its assessed agricultural value is not intended to be put to `good faith commercial agricultural use' per Section 193.461(3)(b), Florida Statutes, supra. Property not put to such use is not entitled to the legislatively-created exception to taxation at full value represented by the agricultural use tax status." (Emphasis added.)
It seems to us that the aforesaid 1972 amendment to the statute points up what must have been the primary legislative purpose of the "green belt" law, viz., to encourage continued agricultural use by assisting a farmer-owner to make a reasonable profit from such use, vis-a-vis, a like profit should it be put to a nonagricultural use. In Straughn, supra, our Supreme Court had this to say about that:[6]
"... The reduced taxation for farmland is based on a legislative determination that agriculture cannot reasonably be expected to withstand the tax burden of the highest and best use to which such land might be put. The agricultural assessed value is the amount that could be invested with a reasonable expectation of an annual return to the owner similar to what he would gain from other commercial enterprises with similar risks, liquidity, degree and level of management, etc."
We think, therefore, that profit motive is a relevant consideration in determining whether a given agricultural use is in fact a bona fide "commercial" agricultural use. Such a motive would certainly be one of the "other factors as may ... become applicable" within the contemplation of subsection (7) of the aforequoted factors listed under subsection (3)(b) of Section 193.461, supra. In fact, it would appear that absent a profit motive from the agricultural use, the above-mentioned statutory presumption of non bona fide agricultural use would be fortified rather than rebutted.
Here, there is no contention, nor can there be, that the trustee-owner of the land (or the beneficiaries of the trust) is profiting by the agricultural use.[7] One-ninth of 1% annual return (i.e., rental equal to $1,300 in yearly taxes) on a $1,000,250 investment is hardly evidence of a profit motive. So the critical fact is whether the Tutens, the actual agricultural users, are materially profiting from such use. In other words, were the Tutens in the year in *132 question carrying on a good faith "commercial" agricultural operation?
Neither the trial court nor the parties below sufficiently zeroed in on this question, although there is some evidence that perhaps the Tutens are not actually bona fide agriculturally using the land in question but, rather, are using it merely as an insignificant adjunct of another cattle ranch operated by them in another county. Moreover, it's apparent from the record and the judgment that the trial court determined the cause simply on good faith agricultural use  not on good faith commercial use  and no specific operative findings were made as to the latter. At this juncture, therefore, the presumption stands unrebutted and should ordinarily prevail as a matter of law. In the interest of fairness, however, and because the trial court did not have the benefit of a prior decision in the premises, we think the matter ought to be retried on the commercial use aspect of the case which all parties apparently overlooked.
In view whereof, the judgment appealed from should be, and it is hereby, reversed; and the cause is remanded for further proceedings not inconsistent herewith.
HOBSON, Acting C.J., and OTT, J., concur.
NOTES
[1] Apparently, the mechanics of the lease-back arrangement are that the Barnett Bank of Naples, holding the legal title as trustee, executed a lease to the beneficiary group of investors (incorporated under the name Investors Research and Development Corporation) who, in turn, assigned the lease back to the Tutens.
[2] 326 So.2d 421 (Fla. 1976).
[3] See, e.g., Hausman v. Rudkin, 268 So.2d 407 (Fla. 4th DCA 1972); Smith v. Ring, 250 So.2d 913 (Fla. 1st DCA 1971).
[4] See Chapter 72-181, Laws of Florida.
[5] Note 2, supra, at p. 424.
[6] Id.
[7] In fact, a profit would unquestionably jeopardize the land trust's status with Internal Revenue Service as a passive land trust.