347 So.2d 724 (1977)
J. Ed STRAUGHN, As Executive Director of the Florida Department of Revenue, James L. Roden, As the Tax Assessor of Polk County, Florida, and Hobson Strain, As the Tax Collector for Polk County, Florida, Floyd Woods, Jack Simmers, Charles E. Whitten and Edwin Thompson, As All of the Members of the Tax Adjustment Board of Polk County, Florida, Appellants,
v.
K & K LAND MANAGEMENT, INC., a Corporation, Appellee.
Nos. 76-1129, 76-1130.
District Court of Appeal of Florida, Second District.
June 15, 1977.
*725 Robert L. Shevin, Atty. Gen., and Zollie M. Maynard, Jr., Asst. Atty. Gen., Tallahassee, for appellants Straughn and Dept. of Revenue.
Michael D. Martin, Lakeland, for appellant Roden.
Ernest J. Rice and Lee Bennett of Lowndes, Peirsol, Drosdick & Doster, Orlando, for appellee.
McNULTY, Acting Chief Judge.
We renew our acquaintance with the parties to this cause.[1] Again, the question is whether K & K Land Management is entitled to a "green belt" assessment of certain lands  this time for the taxable year 1974.
The undisputed relevant facts are that K & K Land Management purchased approximately 350 acres of producing citrus grove. Twenty-five acres thereof were subsequently developed into an amusement attraction known as Circus World, but the remainder of the citrus grove was continued on as before the purchase. The total purchase price of the entire 350 acre tract was approximately six times the previously assessed agricultural assessment, thus bringing into play the following provisions of Section 193.461(4)(c), Florida Statutes (1973):
"Sale of land for a purchase price which is three or more times the agricultural assessment placed on the land shall create a presumption that such land is not used primarily for bona fide agricultural purposes. Upon a showing of special circumstances by the landowner demonstrating that the land is to be continued in bona fide agriculture, this presumption may be rebutted." (Italics supplied.)
The proceedings below were to determine whether the presumption under this subsection was rebutted as to that portion of the tract being continued on as a producing citrus grove. The trial judge concluded that the presumption was rebutted and that the grove was entitled to a "green belt" assessment. We agree.
To begin with, we have recently held in Walden v. Tuten[2] that for entitlement to an agricultural assessment the *726 "green belt" law now[3] requires a "good faith commercial agricultural use" of the land in question and that a profit motive is a relevant criterion in determining whether an agricultural use is in fact a good faith commercial agricultural use. Here, the court expressly found, and there was ample evidence to support it, that insofar as the grove operation itself was concerned, it constituted a bona fide commercial agricultural operation. The precise question herein, however, is whether the grove operation itself can stand on its own feet for purposes of entitlement to a "green belt" assessment therefor or, because of the exorbitant purchase price paid for the entire tract (admittedly, ultimately to be developed fully as a tourist attraction), the statutory presumption must prevail even as against the bona fide grove use in the absence of a showing that a reasonable return on the total investment is contemplated or possible from such grove use. Appellants would answer this question in the affirmative but we cannot agree.
Again referring to Walden v. Tuten, supra, we opined in that case that the primary legislative purpose of the "green belt" law was "to encourage continued agricultural use by assisting a farmer-owner to make a reasonable profit from such use, vis-a-vis, a like profit should it be put to a nonagricultural use."[4] We expand that opinion to conclude that it was the laudable legislative purpose additionally to encourage continued bona fide commercial agricultural use in general, commercial agrarian use being in society's best interest.
The "profit motive" we spoke of in Tuten doesn't necessarily mean that a profit need immediately be sought on the total investment, i.e., the purchase price for an entire tract of land. The purchase price may well have contemplated that the land is to be held for speculation or for a future nonagricultural use, but the statute obviously permits this so long as the land, or at least some of it, is nevertheless presently put to a bona fide commercial agricultural use. Moreover, a potential profit to be made solely from the claimed commercial agricultural use may indeed only sustain such agricultural use itself or, perhaps, it may simply help carry the lands or reduce the investment until such time as the full speculative profits on the purchase price can be realized; but that doesn't mean that such agricultural use should be any less a legislatively encouraged agricultural use. Tax assessors and, in turn, the courts are well equipped to separate truth from sham on the issues of bona fides in such agricultural use and the extent thereof, giving due regard to the criteria set forth in Section 193.461(3)(b), Florida Statutes.[5]
In short, we hold that an agricultural use of land may stand on its own feet insofar as entitlement to a "green belt" assessment is concerned; and appellants' contention to the contrary  that economic factors (here, a reasonable return on the overall purchase price for the entire tract) must outweigh actual physical use factors  is without merit.
In view whereof, the judgment appealed from should be, and it is hereby, affirmed.
GRIMES and SCHEB, JJ., concur.
NOTES
[1] See Straughn v. K & K Land Management, Inc., 326 So.2d 421 (Fla. 1976); Straughn v. K & K Land Management, Inc., 342 So.2d 1107 (Fla.2d DCA 1977).
[2] 347 So.2d 129 (Fla.2d DCA 1977), Opinion filed June 8, 1977.
[3] Section 193.461, Florida Statutes (1973) as amended in 1972.
[4] Note 2, at p. 131.
[5] See Straughn v. K & K Land Management, Inc., 326 So.2d 421 (Fla. 1976).