371 So.2d 496 (1979)
Earl E. FISHER, Trustee, Appellant,
v.
Harry SCHOOLEY, As Lee County Tax Assessor, Dawson McDaniel, As Lee County Tax Collector, and the Department of Revenue, State of Florida, Board of Tax Adjustment for Lee County, Florida, Appellees.
No. 77-1946.
District Court of Appeal of Florida, Second District.
May 9, 1979.
Rehearing Denied June 5, 1979.
*497 Charles L. Bigelow, Jr. of Bigelow & Winesett, Fort Myers, for appellant.
William A. Keyes, Jr. of Stewart, Stewart, Jackson & Keyes, Fort Myers, for appellees.
OTT, Judge.
The lower court entered a final judgment denying appellant/plaintiff landowner's requested agricultural classification. We reverse.
Appellant purchased the subject property in 1971 for $500,000. At that time the property was classified as agricultural. The purchase price was more than three times the agricultural assessment placed on the land. Appellant acquired the property as trustee under a trust agreement for a limited partnership in the business of developing real estate. The intent behind the purchase was to develop the land as a commercial property or resell it for such purposes. Accordingly, prior to closing and as a condition of the purchase, the zoning of the subject property was changed from agricultural to commercial.[1] This rezoning was at the appellant's request and expense.
In 1974, (the tax year in question) the tract was leased to Wendell Crosby, a farmer, who raised various vegetable crops thereon. For the previous seven years, Mr. Crosby had leased the same property for exactly the same purpose, i.e., to raise vegetables. Prior to 1971, he had leased the property in question from the prior owners; then, after the sale, from appellant under essentially identical year-to-year written leases. The property was agriculturally assessed in each of the prior years through 1973. Crosby's farming activities were the subject of some testimony. In essence, Crosby testified that the entire 100 acre tract was under irrigation and cultivation, that he cultivated and sold various crops and that his farming activities were for a profit making purpose; that he farmed only the appellant's property except for an additional *498 40 acres he leased near the end of his operation on appellant's property. His testimony suggests that fewer improvements (such as in the irrigation system and barn) were made than might have been desirable. Moreover, Crosby's testimony was mostly general; he was unable to provide specific figures as to his costs, his yield per acre for each crop, the exact market price secured for a certain crop or the gross or net profit per acre, etc. He indicated he had such records and tax returns but had not been advised he should bring them to court.
Upon acquiring the property, appellant undertook preliminary action looking to future commercial development of the land. The primary goal was to use all or part of the land for a shopping center. Accordingly, appellant secured a land planner to conduct a market study showing traffic and population patterns. Appellant then attempted to attract two or more "prime" tenants, i.e., a supermarket or drug store, which he would use as a basis to apply for bank financing. Although appellant received a tentative commitment from one supermarket, further commitments for the requisite financing were not forthcoming. Thus, development remained only a hope or future expectancy. There was absolutely no non agricultural  commercial  activity on the land. In other words, the developer had every intention to devote the property to nonagricultural use. However, the property continued to be devoted exclusively to agricultural purposes until commercial development became feasible.
For the years 1975 and 1976 the property was leased to a corporate agricultural operation.
Appellant/plaintiff timely filed an application for agricultural classification of his land under the Florida Green Belt Law for the year 1974.[2] The tax assessor (today referred to as the property appraiser) denied appellant's application. On appeal, the Lee County Board of Tax Adjustment reversed the tax assessor and granted the requested agricultural classification. However, the Florida Department of Revenue reversed and the tax assessor's denial was reinstated. Appellant then brought this action in the circuit court below.
At trial the tax assessor gave the following reasons for such denial:
(1) The purchase price paid.
(2) The landowner had future plans for development of the land as a shopping center site, thus the agricultural use was an interim use until the land was ready for development.
(3) The land use zoning was changed from agricultural to commercial.
(4) The area in which appellant's lands are located was changing from an agricultural area to a commercial use area.
(5) The owner [appellant] was not a farmer.
(6) There was no reasonable expectation that the continued agricultural activities would return a reasonable rate of return on the landowner's investment in the land.
The lower court made, inter alia, the following findings of fact:
15. The owner, since he purchased the property, has not made bona fide agricultural use of the land.
16. The evidence is insufficient to overcome the Property Appraiser's determination, which is supported by a presumption of correctness, that the various tenants who used the property under lease did not make a good faith commercial agricultural use of the land.
17. The actual use of the land by the various tenants was for agricultural purposes.
18. Even if the tenants made a good faith commercial agricultural use of the land, that use does not inure to the benefit of the owner ... because of the purchase price paid, the terms of the lease and the other factors testified to by the Defendant Property Appraiser.
*499 The evidence conclusively establishes a "good faith commercial agricultural use of the land" pursuant to § 193.461, Fla. Stat. (Supp. 1978). That statute provides in pertinent part:
(3)(a) [The taxpayer must establish] [T]hat said lands were actually used for a bona fide agricultural purpose.
(b) Subject to the restrictions set out in this section, only lands which are used primarily for bona fide agricultural purposes shall be classified agricultural. "Bona fide agricultural purposes" means good faith commercial agricultural use of the land. In determining whether the use of the land for agricultural purposes is bona fide, the following factors may be taken into consideration:
1. The length of time the land has been so utilized;
2. Whether the use has been continuous;
3. The purchase price paid;
4. Size, as it relates to specific agricultural use;
5. Whether an indicated effort has been made to care sufficiently and adequately for the land in accordance with accepted commercial agricultural practices, including, without limitation, fertilizing, liming, tilling, mowing, reforesting, and other accepted agricultural practices;
6. Whether such land is under lease and, if so, the effect of length, terms, and conditions of the lease; and
7. Such other factors as may from time to time become applicable.
There is little, if any, question that only # 3 above (purchase price paid) is not fully satisfied under the evidence of this case. The price paid derives further import from subsection (4)(c) of the applicable statute, which provides:
Sale of land for a purchase price which is three or more times the agricultural assessment placed on the land shall create a presumption that such land is not used primarily for bona fide agricultural purposes. Upon a showing of special circumstances by the landowner demonstrating that the land is to be continued in bona fide agriculture, this presumption may be rebutted.
In Straughn v. K & K Land Management, Inc., 326 So.2d 421 (Fla. 1976), Justice Sundberg illustrated the interplay between sections (3)(b) and (4)(c). He stated:
"Purchase price paid" is set forth . . as one of seven criteria to be considered by tax assessors in making their determination as to whether property qualifies as agricultural for purposes of the lower tax assessment. Presumably evidence tending to confirm the agricultural nature of assessable land, i.e, "special circumstances", should conform to the other six statutory considerations if the presumption established by Section 193.461(4)(c), Florida Statutes, is to be overcome.
326 So.2d at 423. Later, Justice Sundberg stated:
The phrase "special circumstances", indicating what must be shown in order to overcome the statutory presumption at issue, should be read in pari materia with Section 193.461(3)(b), Florida Statutes, and the seven criteria for determination of taxable status enumerated therein.
Id. at 423.
In Roden v. K & K Land Management, Inc., 368 So.2d 588, No. 51,954 (Fla. 1978) reh. denied March 22, 1979), the supreme court stated the following with reference to the "special circumstances" sufficient to rebut the presumption:
As the Department of Revenue has done before, it stresses that commercial success is a necessary circumstance for rebuttal [of the presumption]. We reject this notion. As we stated in Straughn v. K & K Land Management, 326 So.2d 421 (Fla. 1976), "special circumstances" may be drawn from the factors for consideration in the classification process listed in § 193.461(3)(b). The presence of all or any one factor in particular is not necessary for the presumption's rebuttal.
368 So.2d at 589.
In Walden v. Tuten, 347 So.2d 129 (Fla. 2d DCA 1977) this court stated:

*500 [P]rofit motive is a relevant consideration in determining whether a given agricultural use is in fact a bona fide "commercial" agricultural use. Such a motive would certainly be one of the "other factors as may ... become applicable" within the contemplation of subsection (7) of the aforequoted factors listed under subsection (3)(b) of § 193.461, supra.

347 So.2d at 131.
Implicit in the tax assessor's reasons for denying the agricultural classification and explicit in the lower court's findings is the notion that there did not exist a "good faith commercial agricultural use of the land." In the words of the tax assessor:
(5) The owner [appellant] was not a farmer.
(6) There was no reasonable expectation that the continued agricultural activities would return a reasonable rate of return on the landowner's investment in the land.
The lower court stated:
(18) Even if the tenants made a good faith commercial agricultural use of the land, that use does not inure to the benefit of the owner, ... because of the purchase price paid, the term of the lease and the other factors testified to by the Defendant Property Appraiser.
Both the tax assessor and the lower court have misconstrued the statutory requirement that land must be used for "bona fide agricultural purposes", i.e., a "good faith commercial agricultural use." It is not required that the owner be a farmer or that there be a profit realized on the owner's overall investment.
As we pointed out above, the supreme court in Roden stated that commercial success was not a necessary circumstance for rebuttal of the statutory presumption.
In addition, the supreme court stated in Straughn v. Tuck, 354 So.2d 368, 370-71 (Fla. 1978):
"Commercial agricultural use" simply adds another factor, i.e., profit or profit motive, which may be considered by the tax assessor in determining whether or not a claimed agricultural use is bona fide. It does not, ... limit agricultural classification to commercially profitable agricultural operations.
Also, in this court's opinion in Straughn v. K & K Land Management, Inc., 347 So.2d 724 (Fla. 2d DCA 1977) (styled Roden v. K & K Land Management, Inc. in the supreme court) this court stated the following with reference to "profit motive":
The "profit motive" we spoke of in Tuten doesn't necessarily mean that a profit need immediately be sought on the total investment, i.e., the purchase price for an entire tract of land. The purchase price may well have contemplated that the land is to be held for speculation or for a future nonagricultural use, but the statute obviously permits this so long as the land, ... is nevertheless presently put to a bona fide commercial agricultural use. Moreover, a potential profit to be made solely from the claimed commercial agricultural use may indeed only sustain such agricultural use itself or, perhaps, it may simply help carry the lands or reduce the investment until such time as the full speculative profits on the purchase price can be realized; but that doesn't mean that such agricultural use should be any less a legislatively encouraged agricultural use.
347 So.2d at 726.
In light of the above authority, we hold that the statutory requirement for "bona fide agricultural purposes" and a "good faith commercial agricultural use of the land" were satisfied in the instant case. As the supreme court pointed out in Roden:
"`[U]se' is still the guidepost in classifying land, although other specifically enumerated factors relative to use may also be considered. Agricultural use is now and has always been the test. We adhere to this view."
368 So.2d at 589, citing Straughn v. Tuck, 354 So.2d at 370.
REVERSED and REMANDED.
HOBSON, Acting C.J., and SCHEB, J., concur.
NOTES
[1] This opinion does not deal with a zoning change from a nonagricultural use to another nonagricultural use. In Harbor Ventures, Inc. v. Hutches, 366 So.2d 1173 (Fla. 1979, reh. denied March 22, 1979) the supreme court held that "the legislature intended to limit application of [§ 193.461(4)(a)(3)] to those cases where land is rezoned from an agricultural use to a non-agricultural use at the owner's request." The supreme court declined to address the issue whether this statutory section was unconstitutional. Section 193.461(4)(a)(3) provides:

(4)(a) The property appraiser shall reclassify the following lands as nonagricultural:
(3) Land that has been zoned to a non-agricultural use at the request of the owner subsequent to the enactment of this law ... [Emphasis supplied.]
Since the zoning change in the instant case from agricultural to nonagricultural use was accomplished in 1971, this later statute does not apply.
[2] It was stipulated that the lawsuit would be concerned only with the year 1974 and that the court's decision would be binding on all parties for the subsequent tax years 1975 and 1976.