400 So.2d 983 (1981)
ST. JOE PAPER COMPANY, Appellant,
v.
Hubert R. ADKINSON, Property Appraiser of Walton County, Florida; Jack Little, Tax Collector of Walton County, Florida; Bob Anderson, Lawton Mathews, Hughie Infinger, Milford Bass and Johnnie Moore, As Members of the Board of Tax Adjustment of Walton County, Florida; and J. Ed Straughn, Director, Department of Revenue, State of Florida, Appellees.
No. LL-134.
District Court of Appeal of Florida, First District.
May 18, 1981.
On Motion for Clarification July 1, 1981.
*984 Fred H. Kent, Jr., of Kent, Watts, Durden, Kent & Mickler, for appellant.
Jim Smith, Atty. Gen., Joseph C. Mellichamp, III, Asst. Atty. Gen., for appellee Department of Revenue.
George R. Miller, DeFuniak Springs, for appellees Tax Collector and Property Appraisal Adjustment Board.
McCORD, Judge.
This is an appeal and cross-appeal from a final judgment which denied agricultural classification to certain properties owned by St. Joe Paper Company (St. Joe), appellant, and adjudicating the nonagricultural values placed on the land. We affirm in part and reverse in part.
The appeal arose out of three actions filed in the trial court by St. Joe against appellees. The complaints in the three suits are almost identical and involve basically the same lands. Each suit contests the *985 classification, assessment and taxation of those lands  the first suit for the year 1974, the second for the year 1975 and the third for the year 1976. The three suits were consolidated by the trial court, and a final judgment and amended final judgment were entered on the three consolidated cases.
St. Joe's first point on appeal questions the denial by appellee property appraiser of Walton County of agricultural classification to certain of its lands. St. Joe's Point II and appellees' cross-appeal relate to the nonagricultural values placed on the land.
St. Joe owns and operates a paper mill and two box plants in the State of Florida and numerous box plants outside the State of Florida. In order to supply the mill with pulpwood, St. Joe owns and utilizes large tracts of timberland in both Florida and Georgia, including Walton County, Florida. Its Walton County tract contains approximately 37,500 acres which lie between Choctawhatchee Bay and the Gulf of Mexico in south Walton County. Prior to the three suits contesting the 1974, 1975 and 1976 appraisals involved in this appeal, the property appraiser had reappraised all of the lands in Walton County in 1973. He carved from the edge of the St. Joe tract a strip along the shore of the Gulf of Mexico 210 feet deep and denied agricultural classification to that strip. St. Joe filed suit in the Circuit Court of Walton County both on its 1973 assessment and the denial of agricultural classifications. A final judgment was consented to by the parties and entered by the court in that case. The judgment applied to the assessment of St. Joe's lands for both 1973 and 1974 except for the Gulf frontage and two tracts described in that judgment. In 1974 and subsequently, the strip of Gulf frontage was broadened from 210 feet to 660 feet in depth, and in addition, the property appraiser denied agricultural classification to other portions of St. Joe's tract situated on small lakes near the Gulf. It is the denial of agricultural classification on the 660-foot deep strip of Gulf frontage and the property on the small lakes that is in controversy here.
Section 193.461, Florida Statutes (1977), provides that the property appraiser shall, on an annual basis, classify for assessment purposes all lands within the county as either agricultural or nonagricultural. Subsection (4)(a) provides in pertinent part as follows:
The property appraiser shall reclassify the following lands as nonagricultural:
1. Land diverted from an agricultural to a nonagricultural use;
2. Land no longer being utilized for agricultural purposes;
3. Land that has been zoned to a nonagricultural use at the request of the owner subsequent to the enactment of this law; or
4. Land for which the owner has recorded a subdivision plat subsequent to the enactment of this law.
Subsection (3)(b) sets out the factors to be considered in determining whether the use of the land for agricultural purposes is bona fide as follows:
1. The length of time the land has been so utilized;
2. Whether the use has been continuous;
3. The purchase price paid;
4. Size, as it relates to specific agricultural use;
5. Whether an indicated effort has been made to care sufficiently and adequately for the land in accordance with accepted commercial agricultural practices, including, without limitation, fertilizing, liming, tilling, mowing, reforesting, and other accepted agricultural practices;
6. Whether such land is under lease and, if so, the effective length, terms, and conditions of the lease; and
7. Such other factors as may from time to time become applicable.
The property appraiser gave three reasons for denying agricultural classification to the lands in question: (1) it is not economically feasible for agricultural use; (2) it is not being utilized for agricultural purposes; (3) it will act as a deterrent to the timely and orderly expansion of the area. The third of the foregoing reasons is *986 not a legitimate consideration for the tax assessor in determining whether or not he will deny agricultural classification to lands or reclassify lands nonagricultural. This consideration may be made only by the board of county commissioners. Subsection (4)(b) of Section 193.461, Florida Statutes (1977), provides:
The board of county commissioners may also reclassify lands classified as agricultural to nonagricultural when there is contiguous urban or metropolitan development and the board of county commissioners finds that the continued use of such lands for agricultural purposes will act as a deterrent to the timely and orderly expansion of the community.
No similar language is contained in the statutory directions to the property appraiser in his classification or reclassification of lands as agricultural.
The parties agree that the 660-foot strip of Gulf frontage is composed of beach and sand dunes and that pine will not grow readily along this strip. St. Joe points out, however, that this strip is less than 1.5% of the area of the entire tract; that the record is clear that St. Joe is conducting a bona fide timber operation on its Walton County tract; that opening up the area along the beach to the public would have a negative effect upon their operation in that, as one expert witness testified, there would be increased traffic and more population in the area, all of which would result in increased exposure from fire, trespass, and a possibility of accidents that might occur because of interference with forest management operations; that also there would be an increased garbage problem. St. Joe argues that its Walton County tract is all one unit; that in any tract of forest land there will be a small percentage that is nonproductive; that such nonproductive land should not be removed from its large tract and classified nonagricultural. While there is some logic to this argument, we do not agree that this beach property should be classified agricultural merely to protect the remainder of the tract from increased traffic, trespass, fire and garbage. The edge of any large agricultural tract that fronts upon a publicly used area would be subject to the same problem, and there is nothing in the foregoing statute which would authorize a continuation of agricultural classification to effect such purposes. Under the circumstances shown by the record in this case, we consider that the nonproductive strip of beachfront property, lying as it does on the perimeter of the large tract, was properly classified nonagricultural.
The lake frontage which was classified nonagricultural falls in a different category. It is inland and the record shows that it is forested with considerable merchantable timber. The fact that it would, in all probability be desirable for other uses is not an authorized predicate upon which to classify it nonagricultural. The record shows that it is an integral part of St. Joe's Walton County tract which is used exclusively for growing timber for its paper mill. We, therefore, affirm the classification of the beach frontage as nonagricultural land but reverse the classification of the lake frontage as nonagricultural.
The next point relates to the valuation of the beach frontage as nonagricultural land. The discount methods of appraisal of the Gulf front strip used by the two appraisers (Messrs. Campbell and Teel) presented as witnesses by the Property Appraiser and the alternate (discount) method used by St. Joe's appraisal witness, Earl Adkinson, are appraisal methods which have previously been disapproved by this Court as producing land values that are too speculative upon which to base findings of value for tax assessment purposes. See R-C-B-S Corporation v. Walter, 225 So.2d 426 (Fla. 1st DCA 1969). By this method, the three appraisers determined future use value of these undeveloped lands upon their being subdivided into small lots and the appraisers then discounted the value back to the present. This method involves speculation as to the costs and time required to provide access to the property, surveys, utilities, and approval by governmental agencies. It then requires further speculation as to the period of future time required to sell *987 the volume of lots which would be created. Because those appraisals improperly were based on speculation and conjecture as to future value and use, they should not have been considered in arriving at the assessment.
The Property Appraiser's testimony also was predicated erroneously upon the value of subdivided Gulf front lots. The value of this tract for tax purposes must be its value in its existing state as raw undeveloped acreage and not its value derived through speculation as to its future value in a state which does not now exist followed by a process of discounting that future value back to the present time. The trial court erred in relying to any extent on the speculative testimony.
Affirmed in part and reversed in part and remanded for proceedings consistent herewith.
SHAW, J., concurs.
BOOTH, J., concurs in part and dissents in part.
BOOTH, Judge, concurring in part, dissenting in part:
I would reverse the trial court's ruling denying agricultural classification both as to the interior lake-front areas and the beach perimeter areas. The entire tract is a unit used for bona fide agricultural purposes and should be so classified. Florida Statutes, Section 193.461(3)(b), requires that the lands be used "primarily" for a bona fide agricultural purpose. Exclusive and total use of every portion of the property by planting, grazing, etc., is not required. Fallow and infertile areas, windbreaks, and buffer zones can be an unavoidable part of a farming operation. The agricultural use need not be a profitable one.[1] The statute does not require physical or economic feasibility as to each portion of the property. In Hausman v. Rudkin, 268 So.2d 407 (Fla. 4th DCA 1972), an 800-acre tract was held properly classified agricultural based on the use of 650 acres as pasture for grazing. The balance of the land, 150 acres, was swamp, not used for the farming operation, but included within the perimeter fence. In the instant case, 1.5 percent of the total tract is beach land, unsuitable for growing pines. The beach land, however, as well as the lake-front land, is surrounded by pinelands, inaccessible to highways, and an integral part of the entire tract.
The purpose of the Greenbelt Law is to encourage the preservation of land for agricultural purposes and to avoid penalizing, through taxation, the landowner who maintains land in agricultural use rather than turning it to more lucrative uses such as residential subdivision and commercial development. This purpose is defeated if the tax assessor can carve out of an agricultural tract portions which are not planted in a crop but which are, nevertheless, an integral part of the tract. The public purpose exemplified by the agricultural classification provision outweighs the benefit sought here from increased tax revenues and the resulting forced commercialization and development with accompanying population increase. The loss of these areas presently maintained in a natural state as part of the forestry operation is irreversible.
I concur with the majority in reversing the trial court as to the lake-front interior areas of the tract but dissent, respectfully, from the majority's affirmance of the denial of agricultural exemption to the perimeter areas.

ON MOTION FOR CLARIFICATION
By its motion for clarification, appellant calls attention to the fact that our opinion overlooks ruling upon the property appraiser's denial of agricultural classification and reclassification of lands other than the waterfront lands and lakefront lands. Such lands are 575 acres which were denied agricultural classification and were reclassified by the property appraiser as "raw acreage" and "raw acreage-highway." Such lands are timberlands which lie between the *988 waterfront lands and the access roads and highway. These lands fall in the same category as the lake frontage which we ruled was erroneously classified nonagricultural. The property appraiser erred in classifying the "raw acreage" and "raw acreage-highway" lands nonagricultural.
The motion for clarification is granted, and our opinion is modified accordingly.
BOOTH and SHAW, JJ., concur.
NOTES
[1] Fisher v. Schooley, 371 So.2d 496 (Fla. 2d DCA 1979); Straughn v. K&K Land Management, Inc., 347 So.2d 724 (Fla.2d 1977); affirmed 368 So.2d 588 (Fla. 1979).