ON MOTION FOR REHEARING AND CLARIFICATION
JOANOS, Judge.
On motion for rehearing and clarification by appellants, we grant the motion for clarification, withdraw our prior opinion in this cause and substitute the following as the opinion of the court.
Champion Realty Corporation (Florida) appealed a final order which declared that it is not entitled to agricultural classification for ad valorem taxes of land owned in Santa Rosa County, Florida. The question raised is whether the trial court erred in denying agricultural classification to property owned by appellant. We affirm.
This case is a consolidation of two appeals arising from two separate judgments in a circuit court proceeding. The action began as a claim by appellant, requesting the circuit court to declare that land owned by appellant in Santa Rosa County is entitled to agricultural classification for ad va-lorem tax purposes. The circuit court, in the first judgment appealed, decided the case in favor of the taxing authorities in a declaratory judgment. The tax collector subsequently requested the court to enter a money judgment against Champion Realty pursuant to the provisions of section 194.192, Florida Statutes. The second judgment appealed was thereafter rendered granting the money judgment. The appeal from this second judgment raises no separate issues of fact or law.
Appellant, Champion Realty Corporation (Florida), is a wholly owned indirect subsidiary of Champion International Corporation (hereafter referred to as Champion International). Appellant purchased a *616 number of parcels of real estate from Champion International, including parcels in Santa Rosa County. All of these Santa Rosa County parcels had been classified as agricultural land for ad valorem tax purposes when owned by Champion International. This land had been used by Champion International and its predecessor to grow pine trees. Appellant bought the land for the long-range purpose of reselling it, and advertised its intent to sell all of the lots in several newspapers. Appellant paid approximately 12 times the classified agricultural assessed value of the property. Appellant continued to harvest timber from the property during 1986 and sold the timber to Champion International.
Charles Helton works as a forester for appellant and is responsible for the management and harvesting of timber on appellant’s land. Charles Helton testified that to obtain a second harvest after clear-cutting and replanting, the uneven-age management of forests used by Champion Realty can maximize the owner’s return from the sale of timber. His testimony was supported by Loukas Arvanitis, a professor of forestry from the University of Florida, who testified that appellant was using reasonable and bona fide methods of commercial forestry in the management of this land.
However, Mr. Wilbur Howell, a retired state forester, testified that, with the exception of three land parcels, appellant’s use of the 22 parcels of subject property did not constitute a good faith agricultural use or bona fide forestry. He stated that in general he saw no evidence of any forestry practices whatsoever after the initial timber harvest was made. Rather, Howell testified that what he observed were the familiar acts and practices of a paper company preparing lands for sale for housing development. Robert Burgess, the Santa Rosa County Property Appraiser, testified that he determined the application of the agricultural classification of this property should be denied because he also believed the present use of the property was to market it for residential development rather than to grow timber. The property appraiser testified that he assessed the use of the land by applying the factors set out in Rule 12D-504 Florida Administrative Code and section 198.461, Florida Statutes. Also, he reviewed several photos (admitted into evidence) taken of the property in question in which it was obvious that certain areas of the property had become treeless. After physically reviewing the land, he found that there was rough shod treatment of the property, the road maintenance was poor, and there were no new fire lines. Further, there were many “for sale” signs.
Mr. Kennedy, vice president of appellant, testified that appellant was created to sell property out of Champion International for a federal income tax advantage, the capital gains benefits. He further testified that the company did not envision putting in any new trees, rather was planning on “natural regeneration” for new growth.
Champion Realty had a budget of $1,100,000 in the year of the final hearing. Of that amount, in excess of $500,000 was spent for property taxes and about $600,-000 was spent for marketing the property for sale. Thirty-Thousand dollars was spent for forest management and a portion of Mr. Helton’s $30,000 per year salary, the other portion of which was paid by Champion Realty Corporation’s operation in Texas. It appears that the total budget for forestry operations in the state of Florida would be $45,000, constituting 4% of the total budget of Champion Realty Corporation.
The record reveals that all of the trial judge’s findings as expressed in his order are supported by competent substantial evidence. As in FirstAmerica Development Corporation v. County of Volusia, 298 So.2d 191 (Fla. 1st DCA 1974), cert. denied, 312 So.2d 755 (Fla.1975), the evidence was conflicting but there was ample evidence adduced at trial to sustain the trial judge’s findings. See also Zemel v. Wilkinson, 501 So.2d 694 (Fla. 2d DCA 1987). Therefore, as in FirstAmerica, and Zemel, this court will not substitute its opinion for the findings of the trial court.
Where, as here, the purchase price was far more than three times the agricultural assessment, a presumption is ere- *617 ated that the land is not being used primarily for a bona fide, good faith commercial agriculture purpose. See § 193.461(4)(c), Fla.Stat. This section also provides that upon a showing of “special circumstances” a landowner may demonstrate that the land is to be continued in bona fide agriculture, rebutting the presumption. However, in this instance we agree with appellee that appellant has not established the existence of special circumstances to overcome the presumption. See also Fla.Admin.Code Rule 12D-5.002.
We also find persuasive appellee’s argument that, in addition to obtaining advantageous federal income tax treatment by creating a subsidiary to buy property from the parent company, and thereby receiving capital gains benefit, appellant appears now to be attempting to manipulate the statutes and rules for an even greater tax advantage, by additionally seeking the agricultural classification.
Expert review of the land resulted in testimony that “no evidence of any forestry practices whatsoever after harvest was made ... nothing to encourage regeneration” was found. Also, the vice president of Champion Realty stated that the timber is sold to maximize profits and potential of land, and to generate revenues to defray other costs while the land is in their inventory. It was he who verified that $600,000 of the budget was spent to market the properties for sale, while an estimated $60,-000 was spent on “forest management.”
Appellant argues that where agricultural classification is denied and taxes are increased, an owner is compelled to develop the property and take it out of agricultural production as quickly as possible. This may be true, but it appears to be irrelevant in this situation. As appellee contends, appellant has been advertising consistently that it wishes to sell these lands for residential, commercial, park or resort, and industrial development. Appellant states in the news releases, “[t]he surplus land will be sold to developers and builders.”
Further, we found cases cited by appellant to be factually distinguishable. In Fisher v. Schooley, 371 So.2d 496 (Fla. 2d DCA 1979), in the tax year in question, the land was leased to a farmer who raised various crops, with the entire 100 acre tract under irrigation and cultivation. 371 So.2d at 497.
In Conrad v. Sapp, 252 So.2d 225 (Fla.1971), the properties were solely used for cutting timber, but the respondents testified that they held and took care of the timber, and kept it free from fire, cutting fire lanes on at least one parcel in question. The record revealed that for years the landholder had cut the timber and relied on natural reseeding which had resulted in a competent stand of marketable timber. 252 So.2d at 227. In Hausman v. Rudkin, 268 So.2d 407 (Fla. 4th DCA 1972), the land was still being utilized by the original lessee for livestock operation and improvements were made to the pastures, after the land was sold to the buyers who intended only to resell it for profit. In the instant case, the property appraiser described the general appearance of the property as, “rough shod treatment that the land encountered,” and the sporadic cutting of trees. (The appraiser lived across the street, within sight of the property in question). Although appellant argues persuasively that a landholder should not have to be limited to “row cropping” his land to qualify for an agricultural classification, the record contains expert testimony opining that appellant was not carrying on a “forestry operation.” There was also testimony that some trees which were ripe to be cut, and even overdue, were found still standing. Further expert testimony revealed there was no indication of timber marking for expected cutting, as is customarily found in a bona fide forestry operation. Also, sections of the land appeared to have been “butchered,” with very little timber left, except in clumps, which was not sufficient for regeneration. The above indicates support for the trial court’s conclusion that the property was not primarily used for a bona fide agricultural purpose. The trial court did not mention in its order that it based its denial of agricultural classification on the fact that appellant was not making a substantial profit from timber harvesting, therefore appellant’s emphasis *618 on Roden v. K. & K. Land Management, Inc., 368 So.2d 588 (Fla.1979), which reviewed Straughn v. K. & K Land Management, Inc., 347 So.2d 724 (Fla.1978), is misplaced. In Straughn, 325 acres constituted a producing citrus grove which was maintained even after an additional 25 acres became an amusement park. The second district court noted that “[t]ax assessors, and, in turn, the courts are well equipped to separate truth from sham on the issues of bona fides in such agricultural use and the extent thereof_” 347 So.2d at 726.
Appellant argues that the sole act of cutting down trees constitutes agriculture, and this act was the most significant physical activity on the land, thus deserving of tax exemption. However, as the fourth district court determined in Hausman, “bona fide” as used in the statute imposes the requirement that “the agricultural use be real, actual, of a genuine nature — as opposed to a sham or deception.” 268 So.2d at 409. The evidence and testimony in this case as reviewed by the trier of fact was sufficient to lead to the conclusion that this “forestry operation” was not of a genuine nature.
AFFIRMED.
WIGGINTON and BARFIELD, JJ., concur.