LEHAN, Acting Chief Judge.
This is an appeal by the Polk County property appraiser from a final judgment determining that Estech was entitled to a 1983 agricultural classification for certain of its lands. There is also a cross-appeal from the trial court’s determination that the property appraiser’s valuation of certain other, nonagricultural lands should be upheld. We affirm on the appeal and reverse on the cross-appeal.
We do not conclude that the trial court erred in determining that the lands subject to the appeal should be classified as agricultural lands. This was consistent with that court’s prior determination, affirmed by this court without opinion, that the same lands were entitled to an agricultural classification in 1982. The parties to this litigation stipulated that the actual use of the lands on the 1983 tax day was the same as the use on the 1982 tax day.
As to those lands involved in the appeal, the property appraiser presented arguments which he had made in the 1982 lawsuit. He also contended that water from those lands was necessary for, and materially contributed to, mining on other adjacent lands of Estech. However, we do not conclude that the evidence supports that contention. The only additional evidence differentiating the 1983 situation from the 1982 situation concerned the future use of the land. An example was evidence of a conceptual mine plan for the property. It is conceded that no mining permit for the property had been issued. As this court said in The Glades, Inc. v. Colding, 422 So.2d 349, 351 (Fla. 2d DCA 1982), “Once the court finds a bona fide good faith agricultural use ... the ... future use of the land is irrelevant.” See also Atlantic Richfield Co. v. Walden, 277 So.2d 815 (Fla. 2d DCA 1973). The fact that other lands owned by Estech in the same area were used for mining does not mean that the lands involved in this litigation were so used. See Daniel v. American Cyanamid Co., 480 So.2d 678 (Fla. 2d DCA 1985).
On cross-appeal, Estech contends that the trial court erred in upholding the appraiser’s valuation of other, mined-out lands at $700 per acre. Estech contends that in arriving at that valuation the appraiser disregarded the requirements of section 193.011, Florida Statutes (1983), because he failed to consider the location of the lands, failed to consider that the lands had no use on tax day, failed to consider the cost of reclamation of mined-out lands which is required by section 211.32, Florida Statutes (1983), failed to use proper comparable sales in arriving at market value, and *730 failed to apply the appraiser’s own valuation figure for properties having a use similar to the use which the appraiser determined these lands had. Estech’s position is that, as shown by its own appraisal evidence described below, the lands involved in the cross-appeal had a negative or, at best, nominal value. We do not necessarily agree with that position. We would find it difficult to justify a zero appraised value of land which had a use on the relevant day. But, for the following reasons, we conclude that the case should be remanded.
As to the first of the contentions— location — the testimony presented on behalf of the property appraiser was clear that the appraiser did not consider the location of these lands. Location is a factor which the appraiser must consider pursuant to section 193.011, although he need not give equal weight to each factor specified in the statute. The failure to consider the location of the lands requires the setting aside of the valuation. See Straughn v. Tuck, 354 So.2d 368 (Fla.1977); Lanier v. Walt Disney World, 316 So.2d 59 (Fla. 4th DCA 1975).
We do not agree with Estech’s contention that the appraiser erred in failing to consider that the lands had no use but do find merit in the contention that the appraiser erred in failing to properly consider the appraiser’s own valuation figure for properties having a use similar to the use which the appraiser determined that these lands had. The appraiser contends that the lands did have some use as waste clay settling areas. We cannot conclude that there is no evidence to support this contention. However, the evidence showed that other lands used as waste clay settling areas were appraised at only $100 per acre, not $700 per acre as in this case. No explanation was given as to why these lands were appraised at the higher value if the appraiser considered their highest and best use to be comparable to that of lands appraised at $100 per acre.
Perhaps the most important, and most disputed, factor in this case is the market value of these lands. The parties agree that there have been in the vicinity few sales involving mined-out phosphate lands which have not been reclaimed. The property appraiser based his market value approach on two sales. One did not properly reflect market value because, according to the evidence, it did not involve a willing buyer. The other did not properly reflect market value of comparable property because it involved both mined and unmined property, with no specified allocation of the sales price to the mined-out property.
On the other hand, Estech’s expert witness testified that he could find only one recent sale of mined-out lands which came close to being comparable — a sale of 640 acres of which only 12 acres were subject to mandatory reclamation. The entire 640 acres sold for $156 per acre, which is less than the $700 per acre appraisal in this case.
Estech’s approach is that because of the scarcity of comparable sales, the proper way to determine the value of this land is to determine the value of land which would be comparable to this land after this land is reclaimed and to then deduct from that value the cost of reclamation. Under this method, Estech’s expert witness testified that the cost of reclamation was greater than the eventual value of the reclaimed land. Thus, Estech contends that the land should have a nominal or zero appraised value.
In the final judgment the trial court found that the cost of reclamation would be more than the anticipated value of the land after reclamation. Nonetheless, the court agreed with the property appraiser that that cost is a business expense which does not affect the value of the land. The court analogized the reclamation cost to a mortgage debt encumbering a parcel of land for more than the land’s value in order to produce operating funds. The court said that a prospective buyer would have to pay the mortgage debt and hence would not buy the land, but that the intrinsic value of the land would not be affected.
However, we believe that a more appropriate analogy is to a tract of land with a building on it under the following circumstances. If the building were severely *731 damaged by fire, what would be its proper appraised value? If there were no comparable sales of burned-out buildings from which to derive a market value, then a way of determining the value would be to determine what the building’s value would be if it were repaired and deduct from that value the cost of repairs.
Unlike the example used by the trial court of a mortgage, a fire or other damage to property does affect the intrinsic value of the property. In the example of the fire-damaged building, the owner of the property having set aside money for repairs or having depreciated the building or even having received insurance for the damage, all of which are related to arguments by the property appraiser concerning Estech’s treatment of reclamation costs, would seem to have no effect on the market value of the property. By arguing that Estech had expensed or set aside money for reclamation, the property appraiser in effect seems to be contending that a market value calculated under Estech’s approach would be invalid because the cost of reclamation should be borne by Estech. This seems to be a contention that the true market value of the land is its value after reclamation. However, the relevant market value is the value of the land in its present condition. If Estech sold the land in its unreclaimed state, the reclamation obligation would be imposed on the buyer pursuant to section 211.32(l)(k), which provides that the obligation to reclaim runs with the land and is enforceable against any person claiming a fee interest in the land.
Another way of thinking of the reclamation cost aspect could be to recognize that the condition of the property calling for its reclamation is a factor. The condition of property is another of the factors listed in section 193.011 to be considered by the property appraiser. In this case the condition of the property may be such that the owner or a potential buyer would have to expend monies to make the property usable, thus lowering the value of the property.
Although, as the trial court noted, the property appraiser’s assessment is clothed with a presumption of correctness, in this case it has been shown that the appraiser failed to consider certain factors listed in the statute. In addition, we have concluded that the market value used by the appraiser was unsupported by competent evidence of comparable sales.
Accordingly, we affirm on the appeal, reverse on the cross-appeal, and remand for proceedings consistent herewith.
FRANK and HALL, JJ., concur.