HERSEY, Chief Judge.
This is an appeal of three final judgments upholding a decision of the Broward County Property Appraiser denying agricultural classification for appellants’ property for the years 1984, 1985 and 1986 for ad valorem tax purposes. For the reasons which follow, we reverse.
*1133 The record indicates that the property in question was acquired by the Gianolio family in 1955. It was thereafter operated as a family-run dairy until May 1987. For each of the years from 1955 to 1984 the property had been classified as agricultural.
In 1980 the Gianolios contracted to sell the land to a developer. The contract was subject to the condition precedent that the property be rezoned to nonagricultural use. That occurred in August 1986 and the property was sold at that time. However, the buyer was always free to waive the condition and close at any time.
After the contract was signed the developer undertook extensive efforts to have the property rezoned to nonagricultural use. When those efforts were not successful with the county, the developer sought annexation of the land into Cooper City. The Gianolios cooperated with the developer by signing the necessary papers for the annexation and permitting surveyors on the land.
The property appraiser, appellee, determined from this that the land was not being used primarily for bona fide agricultural purposes and denied it agricultural classification for the years 1984, 1985, and 1986.
The trial court agreed, finding that appellants had not met their burden of excluding every reasonable hypothesis which would support the property appraiser’s determination. This appeal followed.
Section 193.461, Florida Statutes (1989), deals with the agricultural classification and assessment of property. Subsection (1) of that statute directs the property appraiser to annually classify all county land as either agricultural or nonagricultural. The standard for classifying land as agricultural is set forth in subsection (3)(b) which states:
[Ojnly lands which are used primarily for bona fide agricultural purposes shall be classified as agricultural. ‘Bona fide agricultural purposes’ means good faith commercial agricultural use of the land. In determining whether the use ... is bona fide, the following factors may be taken into consideration:
1. The length of time the land has been so utilized;
2. Whether the use has been specific;
3. The purchase price paid;
4. Size, as it relates to specific agricultural use;
5. Whether an indicated effort has been made to care sufficiently and adequately for the land in accordance with accepted commercial agricultural practices, including, without limitation, fertilizing, liming, tilling, mowing, reforesting, and other accepted agricultural practices;
6. Whether such land is under lease and, if so, the effective length, terms, and conditions of the lease; and
7. Such other factors as may from time to time become applicable.
§ 193.461(3)(b) Fla.Stat. (1989).
Thus, in addition to establishing that the actual physical use of the land is agricultural, the taxpayer must show that such use is both “primary” and “bona fide.” This court defined the terms “primary” and “bona fide” in Hausman v. Rudkin, 268 So.2d 407, 409 (Fla. 4th DCA 1972) as follows:
The term ‘primarily’ simply signifies that the agricultural use must be the most significant activity on the land where the land supports diverse activities, (citation omitted). The terms ‘bona fide’ as used in the statute impose the requirement that the agricultural use be real, actual, of a genuine nature— as opposed to a sham or deception, (citation omitted).
The property appraiser determined that, although the actual physical use of the land was agricultural, such use was neither “primary” nor “bona-fide.” The “primary” use of the land, appellee determined, was real estate development. The operation of the dairy was only incidental to that purpose. The property appraiser further found that the dairy operation was not “bona fide,” but rather, a sham.
In challenging those findings in this court, appellants carry a heavy burden. The applicable standard of review has been stated by the supreme court as follows: “[Property] assessors are constitutional of *1134 ficers and as such their actions are clothed with a presumption of correctness. One asserting error on the part of the [property] appraiser must show by ‘proof’ that every reasonable hypothesis has been excluded which would support the property appraiser, (citation omitted).” Straughn v. Tuck, 354 So.2d 368, 371 (Fla.1977). See also Markham v. June Rose, 495 So.2d 865, 866 (Fla. 4th DCA 1986).
However, although it is presumed that the determinations of property appraisers are correct, the presumption is re-buttable. If the taxpayer can demonstrate that the property appraiser abused his discretion or failed to follow the required statutory procedures, his determination will not be entitled to the presumption of correctness. 51 Fla. Jur.2d Taxation § 18:86 (1984).
Appellants argue that the property appraiser’s determination that the land was not being used “primarily” for agricultural purposes is flawed because it ignores the undisputed facts and the relevant case law.
The property appraiser’s theory was that development is a long process that begins not when the first bulldozer comes on the property but rather much earlier, with the applications for development approval, zoning changes, land use changes and annexation, such as took place here. The basic thrust of the appraiser's theory appears to be that because appellants cooperated with the developer in his efforts to obtain rezoning, the property was “primarily” being used for real estate development.
Appellants correctly contend that the property appraiser’s theory does not withstand scrutiny. To begin with, it is contrary to the established meaning of “primary” as defined by the Florida courts. As already noted, the term “primary” was defined by this court in Hausman as “signifying that the agricultural use must be the most significant activity on the land where the land supports diverse activities.” Id. at 409. It is undisputed that there was absolutely no nonagricultural, i.e. commercial, activity on the land during the years in question. And thus it cannot seriously be argued that the dairy operation was not the most significant activity conducted on the land during that time.
Moreover, the weight of the case law supports appellants’ argument. “[Physical] use [of the land] is still the guidepost in classifying land, although other specifically enumerated factors relative to use may also be considered. Agricultural use is now and has always been the test.” Tuck, at 370. In Ridgewood Phosphate Corp. v. Perkins, 487 So.2d 40 (Fla. 2d DCA 1986), the property appraiser denied agricultural classification to a taxpayer whose land, although physically used for grazing cattle, could also be used for mining pursuant to a county permit. Although the land was currently only being used for grazing cattle, it was the taxpayer’s intention to use the land for mining in the future and he had conducted certain preparatory activities, such as obtaining a development of regional impact order, to that end. The property appraiser denied agricultural classification to the property determining that the “primary” use of the land was for mineral extraction. The trial court agreed.
In reversing the trial court, the second district stated:
Land used primarily for bona fide commercial agricultural purposes must be classified agricultural, (citation omitted). Here, the lessee’s use of the 1,840 acres for grazing cattle clearly qualifies this land for an agricultural classification. (citations omitted). Moreover, Ridgewood’s intention to use the leased land for mining and its preparatory activities for that future use were insufficient to deny agricultural classification, (citation omitted).
Id. at 41-42. See also Schooley v. Wetstone, 258 So.2d 483, 485 (Fla. 2d DCA 1972) (wherein the second district addressed a similar argument by stating, “[t]he contention by appellants that the primary use of the lands is for speculative purposes is of no consequence if its actual use is for a bona fide agricultural purpose.” (citations omitted)).
*1135 Appellants next argue that the property appraiser’s second determination, that the dairy was not a “bona fide” operation is also contrary to the undisputed facts and the relevant case law. As previously noted, “bona fide” means “good faith commercial agricultural use.” The supreme court defined “commercial agricultural use” in Tuck as follows: “ ‘Commercial agricultural use’ simply adds another factor, i.e. profit or profit motive, which may be considered by the tax assessor in determining whether or not a claimed agricultural use is bona fide. It does not ... limit agricultural classification to commercially profitable agricultural operations.” Id. at 370-371.
In addition to the “commercial” factor, section 193.461(3)(b), Florida Statutes (1989), provides that the property appraiser may take into account the seven enumerated factors listed in subsection (b). The relative weight to be accorded those factors was addressed by the supreme court in Roden v. K & K Land Management Inc., 368 So.2d 588, 589 (Fla.1978). In that case, after expressly adhering to the test in Tuck, the court stated, “[a]s we intimated in Tuck, the factors listed in subsection (b) of section 193.461(3) are to be considered in making the determination of good faith agricultural use but none is determinative."
The property appraiser decided that the dairy was not a bona fide operation based upon the following:
1. The decline in the dairy’s business from 1980-1986, which he stated demonstrated that the property “was going down the proverbial tube”;
2. His observation that the property had greatly deteriorated over the years;
3. The fact that the Gianolio dairy leased the land from the Gianolio Trust, and the lease was an oral year to year one, the only rent due being the payment of the property taxes which the dairy had not paid since 1980;
4. The fact that the terms of the contract with the developer provided that the developer could close at any time upon payment of the purchase price and at that time the dairy would have only six months to wind up business (as per the fifth modification to the sales contract);
5.The expressed intent of the “Greenbelt Law” (section 193.461) as contained in the preamble to the statute.
The property appraiser’s first reason relates to the “commercial”, i.e. profit or profit motive, nature of the dairy. The evidence regarding how much the Gianolio dairy’s business had declined from 1980-1986 is both voluminous and conflicting. By either account it is clear that the dairy’s business had been steadily declining since 1981. Briefly, appellants argue that, although business had declined, the dairy was still a “good faith commercial operation”. In support of their argument, appellants point to the following: that at all material times the Gianolio dairy was the third largest dairy in Broward County, that at all material times there were at least 800 head of cattle on the property (including bulls, heifers, and calves), that at all material times at least 300 to 500 cows were being milked on a daily basis, that in its lowest production year the Gianolio dairy produced over 4V2 million pounds of milk, enough to furnish the needs of 18,000 people, and that at all material times there were at least 15 to 16 full-time employees.
Additionally, an agricultural economist testified at trial that, based upon his review of the data, he was of the opinion that the Gianolio dairy made a “good faith commercial use” of the property.
The property appraiser, however, concluded that by 1984 the dairy no longer had a reasonable expectation of meeting investment cost and making a profit, and therefore was not a “good faith commercial operation.” He relies upon Markham v. Nationwide Development Co., 349 So.2d 220 (Fla. 4th DCA 1977), and Walden v. Tuten, 347 So.2d 129 (Fla. 2d DCA 1977), cert. denied, 355 So.2d 518 (Fla.1978), for the proposition that while the “commercial” factor does not require the dairy to make a profit, it does require a reasonable expectation of meeting investment cost and making a profit.
*1136 Appellee’s reliance upon those cases is misplaced. First, Nationwide Development was decided prior to the supreme court’s decision in Tuck in which the court expressly stated that agricultural classification is not limited to commercially profitable agricultural operations. Id. at 371. Moreover, appellee overlooks the fact that in Roden v. K & K Land Management Inc. 368 So.2d 588 (Fla.1978), the supreme court expressly disapproved requiring a reasonable expectation of meeting investment cost and making a profit in order to obtain agricultural classification. The evidence in the instant case, although conflicting, conclusively established that a commercial dairy operation was being operated.
The property appraiser’s second reason for classifying the Gianolio dairy operation as not bona fide was that, in his opinion, the physical condition of the property had deteriorated to such an extent that, by 1984, an agricultural operation could not be conducted upon it. Whether the property is being sufficiently and adequately cared for is one of the seven statutory factors which the property appraiser may consider.
The property appraiser testified that through his own inspections and aerial photographs he had become aware that the property was overgrown and not manicured, that fences and structures were in need of repair and that there were several junked automobiles on the premises.
The appellants presented testimony that the entire land was mowed at least once a year through 1986, that fencing repairs were continued through 1986, and that other repairs were made when necessary.
While the property appraiser may have been correct that some of the Gianolio property was in need of repairs during the years in question, his determination that the physical condition of the land had deteriorated to such an extent that the operation of a commercial dairy was not feasible is contrary to the evidence.
The third reason given by the property appraiser as to why the dairy was not a bona fide operation was that the Gianolio dairy leased the land from the Gianolio Trust. Whether the land is under lease and the terms of such lease is also one of the seven statutory factors which may be taken into consideration. The lease in this case was an oral, year to year one. The Gianolio dairy was required to pay, as rent, the property taxes on the land. The property appraiser determined that the lease was, in effect, not a lease at all. Rather, the agricultural activity existed at will. As evidence of this the property appraiser points to the fact that the Gianolio dairy never paid the property taxes after 1981, they were paid by the Gianolio Trust.
Appellants argue that whenever the Trust paid the property taxes a loan was set up on the company books and when the loan was repaid it would be considered the payment of taxes. All of the outstanding loans were repaid by the corporation at the conclusion of the dairy operation.
The property appraiser further determined that the nature of the lease coupled with the existence of the contract for sale, which could have closed at any time upon payment of the purchase price, indicated that the Gianolio dairy could have been discontinued at any time after 1980. The basic thrust of the appraiser’s theory is that the Gianolio dairy was not a bona fide operation because after 1980 it no longer had a long-term commitment to agriculture.
As appellants correctly point out, this theory is without merit for several reasons. The law in Florida is clear that in determining the agricultural classification of property the only relevant date is January 1 of the tax year in question.
It is ... the actual use of [the] property as of the assessment date that controls in determining entitlement to agricultural classification. Under the taxing statutes the assessment date is January 1 of each year, and the character of a particular parcel of land, including whether or not it should be classified as agricultural, is determined by its use as of that date. (Citations omitted.)
Bystrom v. Union Land Inv. Inc., 477 So.2d 585, 587 (Fla. 3d DCA 1985), rev. denied, 488 So.2d 69 (Fla.1986).
*1137 Thus, the property appraiser is to look only at January 1 of the relevant tax year in determining the property’s classification. The property appraiser in this case failed to follow statutory procedure and factored the owner’s future intent to sell the property into his determination that the property was not now being used for a bona fide agricultural purpose.
In Roden v. Estech, Inc., 508 So.2d 728 (Fla. 2d DCA), rev. denied, 518 So.2d 1277 (Fla.1987), the second district, in discussing what effect the owner’s intended future use of the land should have on the determination of agricultural classification, stated: “As this court stated in The Glades, Inc. v. Colding, 422 So.2d 349, 351 (Fla. 2d DCA 1982), ‘[o]nce the court finds a bona fide good faith agricultural use ... the ... future use of the land is irrelevant’.” (citation omitted). Id. at 729.
Cases which have considered the owner’s intended future use of the property have involved real estate speculators who purchased the property for the expressed purpose of developing it or reselling it for a profit in the future. Those cases are inapplicable to this one because it is unquestionable that the owners, the Gianolios, purchased the property for the sole purpose of farming. Thus, the property appraiser has incorrectly considered the owner’s intended future nonagricultural use of the property.
The final reason given by the property appraiser for determining that the dairy was not bona fide is that the intention to develop this property is inconsistent with the expressed purpose of the Florida Greenbelt Law (section 193.461) as stated in the preamble to the statute. The preamble basically states that the legislature intended to protect and enhance agriculture while encouraging good faith commercial agriculture. The property appraiser determined that the intention to develop the Gianolio property was antithetical to the protection of agriculture.
It is true that the intent of the legislature was to encourage good faith commercial agricultural use. However, as appellants point out, it does not necessarily follow that any intention to develop lands in the future so that a profit may be realized compels the conclusion that the land is not presently being used for a “bona fide” purpose. If an owner is currently using his property primarily for agricultural purposes and has demonstrated that such use is bona fide, his intention to sell the land in the future or use it for a nonagricultural purpose in the future is immaterial.
Finally, we note that the Gianolio property meets the other factors enumerated in the statute. That is, the Gianolio property has been continuously operated as a dairy since 1955. The purchase price paid was not three times more than the agricultural assessment of the land. And the dairy operation was the third largest in Broward County. All of these things show that the property was being used primarily for a bona fide agricultural purpose.
It is clear that the Gianolio property was not sold until August 1986 and did not terminate operations until March of 1987. The event, according to the property appraiser, that triggered the reclassification was the annexation of the property into Cooper City in February 1983. The property appraiser classified this as a substantial change in the use of the property. However, the evidence showed that after the property had been annexed, the dairy operation continued as usual throughout 1984, 1985 and 1986. The property appraiser has sought to deprive the taxpayer of the benefit of agricultural classification solely on the basis of her intention to sell the property in the future to a developer. The law, however, does not recognize this as a proper basis upon which to predicate denial of agricultural classification. Based on the foregoing, we reverse.
REVERSED.
WARNER and GARRETT, JJ., concur.