595 So.2d 159 (1992)
Timothy and Julie AITKEN, Appellants,
v.
William MARKHAM, etc., et al., Appellees.
No. 91-0800.
District Court of Appeal of Florida, Fourth District.
February 19, 1992.
Jeffrey A. Blaker of Hinshaw & Culbertson, Miami, for appellants.
Gaylord A. Wood, Jr., of Law Offices of Gaylord A. Wood, Jr., Fort Lauderdale, for appellees.
*160 POLEN, Judge.
Appellants, Timothy and Julie Aitken, bring this appeal from a final judgment ratifying and confirming the Broward County Property Appraiser's denial of their application for agricultural classification. We reverse the final judgment.
The Aitkens are owners of approximately 22 acres of land in Davie, Florida. Their property was purchased in 1987 for $1,000,000.00, which included approximately $913,000.00 for the land and buildings, with the remainder of the purchase price attributable to inventory such as farm machinery, equipment, tools, a mobile home, and household furnishings. The land is zoned A-1 agriculture, but is not classified as agricultural land for tax purposes. Approximately 17.44 acres are devoted to the Aitkens' horse breeding business.
Julie Aitken had bred Dutch Warmblood jumping horses in England for approximately twenty (20) years before moving her business to the United States to avail herself of a more lucrative market. After purchasing their property, the Aitkens completed repair and maintenance work to the farm buildings, fencing, and irrigation system, in preparation for the arrival of their breeding stock from England. They fertilized, mowed, harrowed, and sprayed the pastures. The Aitkens also acquired and leased several broodmares that were bred with their stallion, Ranley, through 1988. These broodmares foaled in 1989.
As of January 1, 1989, the determinative date for purposes of the Aitkens' application for agricultural classification, horses maintained on the Aitkens' property included the stallion Ranley, six (6) of his offspring that had been born in England and shipped to the United States, three (3) pregnant broodmares due to foal later that year, one (1) "boarder,"[1] and six (6) "renters."[2] There were two (2) full-time and one (1) part-time employees on the farm. Julie Aitken testified that the primary use of her land was breeding horses for profit. This opinion was shared by the Aitkens' veterinarian, Dr. Loudermilk; a professional horseman, Margie Goldstein; and the operator of a Dutch Warmblood horse breeding facility in New York, Sue Burkhart Williams.
Aitken had established a corporation, Oakridge Farms, Inc., to protect herself from personal liability and to operate the horse breeding business. In order to increase the asking price for Ranley's stud services and offspring, Ranley was entered in a few horse jumping shows in South Florida in 1988. An advertisement for his stud services was placed in a local magazine catering to those in search of such services.
Testimony at trial, including that of the Broward County Property Appraiser, indicated that an agricultural classification exemption had been granted for land used to breed standardbred horses involved in the pari-mutuel industry, because the Property Appraisal Adjustment Board had granted that classification to breeders of Standardbreds in the past, and the Board wanted to be consistent.
From the outset, we note that "[t]ax assessors are constitutional officers and as such their actions are clothed with the presumption of correctness. One asserting error on the part of the tax assessor must show by `proof' that every reasonable hypothesis has been excluded which would support the tax assessor. Powell v. Kelly, 223 So.2d 305 (Fla. 1969)." Straughn v. Tuck, 354 So.2d 368, 371 (Fla. 1977). The determination as to whether land is being used primarily for bona fide commercial agricultural purposes must be based upon consideration of the physical use of the land, as well as the statutory factors enumerated in section 193.461, Florida Statutes (1987). Gianolio v. Markham, 564 So.2d 1131, 1134 (Fla. 4th DCA), rev. denied Markham v. Gianolio, 569 So.2d 1279 (Fla. 1990). Therefore, in order for appellants to succeed on appeal, they must demonstrate that proof at trial regarding the physical use to which the land was put, as well as those factors enumerated *161 in section 193.461, excluded every reasonable hypothesis supporting the tax assessor's denial of their application. Analysis of the applicable statute in light of the testimony at trial reveals that appellants have satisfied their burden.
Section 193.461, Florida Statutes (1987), provides in pertinent part:
193.461 Agricultural lands; classification and assessment. 
... .
(3)(b) Subject to the restrictions set out in this section, only lands which are used primarily for bona fide agricultural purposes shall be classified agricultural. "Bona fide agricultural purposes" means good faith commercial agricultural use of the land. In determining whether the use of the land for agricultural purposes is bona fide, the following factors may be taken into consideration:
1. The length of time the land has been so utilized.
2. Whether the use has been continuous;
3. The purchase price paid;
4. Size, as it relates to specific agricultural use;
5. Whether an indicated effort has been made to care sufficiently and adequately for the land in accordance with accepted commercial agricultural practices, including, without limitation, fertilizing, liming, tilling, mowing, reforesting, and other accepted agricultural practices;
6. Whether such land is under lease and, if so, the effective length, terms, and conditions of the lease; and
7. Such other factors as may from time to time become applicable.
... .
(5) For the purpose of this section, "agricultural purposes" includes horticulture; floriculture; viticulture; forestry; dairy; livestock; poultry....
§ 193.461, Fla. Stat. (1987) (emphasis added). "Livestock" is defined in Florida Administrative Code Rule 12D-1.001, as "[a]nimals kept or raised for use or pleasure; especially farm animals kept for use and profit." This definition would encompass the Aitkens' horses.
The terms "primarily" and "bona fide" as used in this statute have been further defined in Hausman v. Rudkin, 268 So.2d 407, 409 (Fla. 4th DCA 1972). Those definitions were reiterated in Gianolio as follows:
The term `primarily' simply signifies that the agricultural use must be the most significant activity on the land where the land supports diverse activities. The terms `bona fide' as used in the statute impose the requirement that the agricultural use be real, actual, of a genuine nature  as opposed to a sham or deception.
Gianolio, 564 So.2d at 1133 (citations omitted).
The evidence supports the conclusion that as of January 1, 1989, the Aitkens' primary use of 17.44 acres of their land was for the bona fide commercial agricultural use of breeding Dutch Warmblood jumping horses. From the time the Aitkens purchased their land in 1987, 17.44 acres of that land were continuously used for the breeding of Dutch Warmblood horses. There were several aspects to the Aitkens' commercial operation in its early stages including preparing the stallion for jumping performances in order to increase his value and that of his offspring; boarding horses and renting stall space to supplement income; and acquiring broodmares for impregnation. All of these activities took place continuously on the land.
The purchase price of the land, although high, included the Aitkens' furnished residence. Testimony supports the conclusion that the parcel used for horse breeding was sufficiently large to conduct that commercial venture and included separately fenced areas to permit the exercising and training of the animals. It was uncontradicted that the Aitkens sufficiently cared for the land as necessary to support their business, including repair and maintenance of structures as well as fertilizing, mowing, harrowing, and spraying the pastures.
*162 While it is true that the Aitkens' Dutch Warmblood horse breeding business did not appear to be a profit making venture as of January 1, 1989, the business was in its early stages at that time. Further, in order to obtain agricultural classification, it is not necessary that the applicant demonstrate a reasonable expectation of meeting investment costs and making a profit. Gianolio, 564 So.2d at 1136.
Lastly, we are troubled by what appears to be the policy of the property appraiser that Standardbred horse breeders be granted the agricultural classification exemption, while Dutch Warmblood horse breeders be denied that classification. While the decision to grant an agricultural classification exemption in any particular case must be made with reference to the circumstances of that case, and not all horse breeders may be entitled to the agricultural classification, the disparate treatment afforded breeders of Standardbreds and Dutch Warmbloods does not appear to be founded upon any legitimate justification.
We reverse the final judgment denying the Aitkens' application for agricultural classification on 17.44 acres of their land for 1989, and remand with directions that the application be granted.
REVERSED and REMANDED.
GLICKSTEIN, C.J., and WARNER, J., concur.
NOTES
[1] A horse the Aitkens did not own, for which they provided complete care.
[2] Horses the Aitkens did not own that were housed in rented stall space.