251 So.2d 6 (1971)
Shellie E. McKINNEY, As Tax Collector for Alachua County, Florida et al., Appellants,
v.
Alpha L. HUNT and Elizabeth S. Hunt, His Wife, Appellees.
No. N-444.
District Court of Appeal of Florida, First District.
August 3, 1971.
Chandler, O'Neal, Carlisle, Avera, Gray & Lang, Gainesville, for appellants.
Richard J. Wilson, Gainesville, for appellees.
*7 GOODFRIEND, SAM, Associate Judge.
Appellant seeks review of a final judgment rendered May 13, 1970, in the Circuit Court of Alachua County, holding that Appellees' lands were entitled to agricultural tax treatment under the provisions of Section 193.201, as amended by Chapter 67-117, Acts Florida Statutes, as amended and renumbered Section 193.461, Florida Statutes, F.S.A.
Plaintiff-appellees are the owners of 15 acres of land in Alachua County, Florida. In 1969, appellees' land was assessed by the appellants-defendants at fair market value rather than as agricultural land. Appellees' complaint sought a declaration that the assessment was illegal and to have the 1969 taxes declared void, discriminatory and illegal for the reasons that said property was being used for bona fide agricultural purposes, and was entitled to the tax benefits on January 1st, 1969, as provided for under Section 193.461, Florida Statutes, F.S.A. Appellees contended that the property was so classified for tax purposes in 1968.
The Trial Judge, the Honorable George L. Patten, adjudged that the assessment of appellees' property was nonagricultural property is unlawful and invalid and ordered and directed the defendants-appellants herein to assess said property as agricultural land.
The land in question consists of fifteen acres, owned by plaintiff-appellees since 1935. The fifteen acres consist of 11 acres of improved pasture, 2 1/2 acres of field crops and 1 1/2 acres on which appellees' home is situated. Appellees occasionally sold a cow, but the crops are raised primarily for appellees' own use. The appellee works forty hours a week as a maintenance man, off the land, and cares for the crops and cows during his spare time with the use of some farm equipment. The appellees have lived on and used the property since 1935 for such purposes and the agricultural use of their land increased slightly from 1968 and 1969. The Trial Court found:
"1. The above described land was properly assessed as agricultural lands within 193.201 Florida Statutes, F.S.A. for the tax year 1968.
"2. There has been no change in the use of said land since the year 1968, except that the agricultural use has been more intensified.
"3. That said lands were being used as agricultural lands on January 1, 1969, and entitled to be assessed as agricultural lands and taxed accordingly."
and adjudged in part as follows:
"The assessment of the property described herein by the Defendants as nonagricultural property is unlawful and invalid and the Defendants are ordered and directed to assess said property as agricultural lands * * *"
According to stipulation of the parties, testimony of an Alachua County Commissioner, who was also a member of the Alachua County Zoning Board, was presented by appellants showing the reason for appellees' land being zoned agricultural in 1968 was namely because of insufficient facts, the volume of applications for agricultural zoning, and 1968 was the first year the zoning board operated.
Appellants presented testimony from a county agent, other members of the Alachua County Commission, and the Agricultural Zoning Board which described appellees' operation as a garden rather than a farm, and that a farm provides food and fiber for the community.
The appellants claim the Circuit Court erred in finding the Plaintiff entitled to an agricultural assessment within the meaning and intent of Section 193.201, now renumbered 193.461, Florida Statutes, F.S.A., and the assessment of defendant as nonagricultural to be unlawful.
The finding that the 1968 assessment was valid as agricultural and cannot be *8 changed to nonagricultural in successive tax years without a substantial change in the use and character of the lands is consistent with the Statute which provides that said land may be reclassified to another use on ceasing to be used for agricultural purposes.
Florida Statutes Section 193.201, as amended by Chapter 67-117, Acts of 1967, now renumbered as 193.461, provides in part:
(1) * * *
(2) The county agricultural zoning board, in order to promote and assist a more orderly growth and expansion of urban and metropolitan areas, shall on an annual basis zone all lands within the county as either agricultural or non-agricultural.
(3) No lands shall be zoned as agricultural lands unless a return is made as required by law which shall state that said lands on January 1 of that year were used primarily for agricultural purposes, and the board, before so zoning said lands, may require the taxpayer or his representative to furnish the board such information as may reasonably be required to establish that said lands were actually used for a bona fide agricultural purpose. All lands which are used primarily for bona fide agricultural purposes shall be zoned agricultural. The maintenance of a dwelling on part of the lands used for agricultural purposes shall not affect the right to have such lands zoned as agricultural lands.
(4) (a) When property which is zoned as agricultural is diverted to another use or ceases to be used for agricultural purposes, the board shall reclassify such property as nonagricultural.
(b) The board may also reclassify lands zoned as agricultural as nonagricultural when there is contiguous urban or metropolitan development on two or more sides and when the board finds that the continued use of such lands for agricultural purposes will act as a deterrent to the timely and orderly expansion of the community.
(5) For the purpose of this section, "agricultural lands" shall include horticulture, floriculture, viticulture, forestry, dairy, livestock, poultry, bee, pisciculture where the land is used principally for the production of tropical fish and all forms of farm products and farm production.
(6) The county tax assessor in assessing such lands so zoned and primarily used for agricultural purposes as described and listed shall consider no factors other than those relative to such use. The tax assessor in assessing land within this class shall take into consideration the following use factors only:
(a) (b) (c) (d) (e) (f) (g) * * *.
The definition of a farmer, in part, as contended by the appellants, is "* * * one who resides on a farm with his family, cultivating such farm and mainly deriving his support from it; * * * one who cultivates a farm either as owner or lessee * * *" The appellants contend that there must be something more than raising vegetables and cows for oneself or personal use. That it was the intention of the legislature to protect the bona fide farmer from the urban sprawl and tax assessments on a basis other than fair market value without being limited to its agricultural use, should require the meaning of the word "farmer" be given major consideration in determining whether or not the lands were being bona fide used for agricultural purposes.
There are three main thrusts of the appellants' contentions for lands to be taxed agricultural in lieu of fair market value, namely:
(a) Whether or not the appellees have used said lands for bona fide agricultural purposes, and/or,
(b) Whether or not the owner of such an agricultural operation would be a farmer, and/or,
*9 (c) Whether or not such agricultural operation does contribute to the food and fiber of the community or does somehow find its way into the stream of commerce.
There was no doubt nor contentions that the appellees used the land in one or more of the uses stated in the Statutes (193.461) as being agricultural, i.e., raising of livestock, raising of vegetable crops and pasture land for their cows. It appears the appellant questions the degree, the productivity and the ability to derive a livelihood therefrom.
Section 193.461, Florida Statutes, F.S.A., provides that the land must be used primarily for agricultural purposes, and that all lands which are actually used for bona fide agricultural purposes shall be zoned agricultural. It is needless to say that if the appellees were farmers pursuant to appellants' definition and were farming the land involved, that the land would have to be considered as agricultural and the use bona fide. But the use of the land is what is involved in the Statutes, and not whether the owner or operator was earning a livelihood from such use. The Contention that such agricultural operations should contribute to the food and fiber of the community or in some way find its way into the stream of commerce would be a effected by the area of land, the productivity of the land, the ability and efficiency of the operator, and touches upon profit in order to determine whether or not the owner or operator is deriving sufficient funds therefrom for his support and whether the crops are reaching market or pay to be taken to market. In this country there are farms which vary in size from 1 acre to more than 100,000 acres, and needless to say, the productivity of less than one acre tracts of land may not provide substantially to the owner or operator without outside employment, and to provide that the earnings or livelihood is a basis for bona fide agricultural uses cannot be a standard to deny the agricultural tax benefit.
Within the past twenty years, there were times when 2/3 of the farms produced more than 97% of all produce marketed, and to use such standard now of a productivity basis to the community, as a standard for the granting of an agricultural taxation, would open the door to deny the small nonproductive tracts of land which are used for cultivation of crops, pasture or raising of cows, such benefits. Considering whether or not the appellees were actually using the lands for a bona fide agricultural purpose, the fact that they primarily raised the crops for their own use, although others came and picked some of the harvest, does not change the use of land by owner by the use of the products therefrom.
The contention of appellants that the legislative act was to protect the farmer from speculators who would allow the land to remain idle and minimize his ad valorem taxes, holding the land until it was ready to sell at his own price, should be considered, however, the legislature has provided safe-guards allowing the rezoning of property when such land is diverted to another use or ceases to be used for agricultural purposes. In addition thereto, the legislature provided another safe-guard allowing the zoning board to re-classify land zoned as agricultural to nonagricultural when there is contiguous urban or metropolitan development on two or more sides, and the board finding that continued use of such lands from agricultural purposes will act as a deterrent to the timely and orderly expansion of the community. There has been no showing that the land of the appellees was diverted to another use or ceased to be used for agricultural purposes. There is no showing or any basis of re-classifying said lands as nonagricultural because of urban or metropolitan development and because of any changes which would act as a deterrent to the timely and orderly expansion of the community, as provided in said 4(a) and 4(b) of the Statutes.
All of the legislative directives in this field appear to have been designed to make sure that in doubtful areas, the assessment *10 will be made on the basis of the actual use to which the property is designed to be put during the particular tax year. One must note that this is limited to a particular tax year, as determined of January 1 of such year, and continues throughout the tax year, even if it is changed during that year. Any expected use must be expected immediately, not at some vague, uncertain time in the future.[1] Whether or not some future use will require change for taxing purposes will depend upon such actual use or expected use, and each case must depend on its facts involved.
The use of the land rather than the occupation of its owner, and not profitable agricultural operations, or even efficient operations, is relevant, so long as the land itself is used in good faith for agricultural purposes.[2]
In this case, the land involved does not remain idle, as 11 acres of improved pasture (which may or may not be sufficient for the profitable raising of cattle), 2 1/2 acres of field crops (which may or may not substantially find its way to market for profit) and 1 1/2 acres on which the appellees' home is located.
This land has been so used for bona fide agricultural purposes in 1968 with an increase in intensity in 1969 without diverting such use and without ceasing to be used for agricultural purposes in 1969, in good faith.
In that we find that the Court below was correct in finding that the appellees' lands were being used as agricultural lands on January 1, 1969, and entitled to be assessed for agricultural lands, and taxed accordingly, we are now touching upon the question of whether or not there cannot be a valid change in the assessment of lands for tax purposes from agricultural to nonagricultural in successive tax years without a substantial change in the use and character of the lands.
The appellants contend that Section 197.011, Florida Statutes, 1969, F.S.A., provides for correcting officer's errors affecting payment of taxes to support the rezoning of appellees' land as nonagricultural.
We are not contending that an error by taxing officials may not be corrected in a subsequent year, or that even an error in judgment may not be corrected in the same year prior to the certification of the tax roll. To conclude otherwise would be to conclude that land can never be diverted from or to agricultural purposes. However, if said lands were used for bona fide agricultural purposes in 1968, in order for said lands to be denied the agricultural status in January 1, 1969, the lands would have to have been diverted to other use or ceased to be used for agricultural purposes, or to have been re-classified as provided in 4(a) and 4(b) of 193.461, Florida Statutes, F.S.A.
The trial Court's findings that the appellees' lands were properly assessed as agricultural lands within the provisions of Chapter 193.201, Florida Statutes, for the year 1968; that there has been no change in the use of said lands since the year 1968 except that the agricultural use has been more intensified; and, that said lands were being used as agricultural lands on January 1, 1969 and are entitled to be assessed as agricultural lands and taxed accordingly, we find to be correct.
The judgment appealed is affirmed.
RAWLS, J., concurs.
WIGGINTON, J., concurs specially.
WIGGINTON, Judge (concurring specially).
I concur in the opinion of affirmance authored by Judge Goodfriend.
*11 My review of the evidence, when considered in a light most favorable to the prevailing party, establishes that appellee, a non-farmer maintenance worker employed at Sunland Training Center in Gainesville, lives on a rural home site for which he seeks an agricultural zoning classification for tax assessment purposes. On his 20-acre parcel of land is located his dwelling and curtilage, a kitchen garden, and two or three cows which range on the pasture composing the remainder of his property. The garden and cows are maintained for his own personal use although his surplus garden vegetables are sometimes sold to others if they will come and gather tham when ready for harvest. I must conclude that appellee's utilization of his land constitutes more of a bona fide agricultural operation than was found by the Supreme Court to constitute a bona fide forestry operation by the landowners in the decision recently rendered by it in the cases of Conrad v. Sapp., Fla., 252 So.2d 225, opinion filed July 14, 1971, and St. Joe Paper Company v. Mickler, Fla., 252 So.2d 225, opinion filed July 21, 1971. It is only because of the Supreme Court's conception of what constitutes bona fide agricultural or forestry operation as set forth in those decisions that I concur herein.
NOTES
[1] Lanier v. Overstreet, Fla., 1965, 175 So.2d 521, 524.
[2] Matheson v. Elcook, Fla.App., 1965, 173 So.2d 164.