654 So.2d 194 (1995)
Kenneth M. WILKINSON, Lee County Property Appraiser, and William Fussell, Lee County Tax Collector, Appellants,
v.
Larry KIRBY, Trustee, Appellee.
Nos. 94-00064, 94-00067 and 94-03139.
District Court of Appeal of Florida, Second District.
April 19, 1995.
*195 Michael C. Tice, Fort Myers, for appellants.
Robert B. Burandt of Aloia, Dudley, Roosa, Sutton, McIver & Burandt, Cape Coral, for appellee.
ALTENBERND, Judge.
The Lee County Property Appraiser and the Lee County Tax Collector[1] appeal final judgments granting an agricultural classification under section 193.461, Florida Statutes (1991), for approximately 24 acres of property in Cape Coral, Florida, owned by Larry Kirby, as trustee. Although the trust may have purchased this land for residential development, it was entitled to receive the green belt classification for land that it actually placed into permanent, bona fide use as a tree farm.
Mr. Kirby is a developer and a part-owner of Nu-Cape Construction, a general contractor. In 1980, Mr. Kirby, as trustee of a land trust, purchased 72 acres of undeveloped land in Cape Coral for $1,200,000, or approximately $16,500 per acre. The trust planned to develop residential condominiums on the property. In 1981, the City of Cape Coral (the City) approved a zoning request to allow a planned unit development on the property, which would be known as Coral Cove.
A few canals were cut into this land, but no buildings were constructed and the development did not otherwise progress. Sometime before 1984, Mr. Kirby concluded that the project was not feasible, and he began to plant trees on the property. He has planted many varieties of trees for use in landscaping. By 1991, 18 acres of the property were planted with trees. In 1992, 24 acres were planted with trees. By the time of trial, there were more than 10,000 trees planted on approximately 50 acres. Mr. Kirby testified that he spent many hours each week caring for the tree farm. The tree farm also employs several laborers. The operation uses more than six miles of irrigation pipe and has a permit from the South Florida Water Management District to use water for a tree farm. The photographs in the record clearly show that the land is being used on a permanent basis as a typical ornamental landscape farm.
In 1989, during a zoning reevaluation, the City reclassified the property from its planned unit status to RD, a residential development status. So long as the trust does not use the property as a public sales location for its trees, the City does not regard this farm as a violation of this new zoning. The trust which owns this land is a family trust. Many of Mr. Kirby's other development corporations are also businesses owned by his family. Rather than sell the trees to the public, the trust has allowed the trees to *196 be used in the other businesses without charge. Thus, the trust is not currently generating a profit, but the other family businesses are generating greater profits because they receive the trees at no cost.
The trust first applied for an agricultural classification in 1991. The Property Appraiser denied that application, as well as the application made in 1992. The trust appealed to the Lee County Value Adjustment Board, which denied the appeal. Thereafter, the trust filed suit in circuit court pursuant to section 194.171, Florida Statutes (1991). After conducting an evidentiary hearing, the trial court found that 18 acres of the property in 1991, and 24 acres in 1992, were used for "bona fide agricultural purposes," and were entitled to an agricultural classification.[2] This classification results in a substantially reduced assessment. The Property Appraiser and Tax Collector appeal this ruling.
We recognize that a property appraiser's decision is clothed with the presumption of correctness, and that a taxpayer must prove that no reasonable hypothesis supports the property appraiser's decision. Straughn v. Tuck, 354 So.2d 368 (Fla. 1977); Aitken v. Markham, 595 So.2d 159 (Fla. 4th DCA 1992). Nevertheless, the Property Appraiser's assessment in this case was based on a misapplication of the law. In many respects, the error made by the appraiser in this case is comparable to the error made by the Lee County Tax Assessor in Fisher v. Schooley, 371 So.2d 496 (Fla. 2nd DCA 1979) (holding that owner was entitled to agricultural classification for land purchased for development but used exclusively for agriculture).
The trust clearly proved that the land was being used for agricultural purposes in the relevant tax years, and that the agricultural use was neither new nor temporary. Considering the six specific factors delineated in section 193.461(3)(b)1-6, the only factor suggesting the land may not be used for agricultural purposes is its purchase price.[3] There is a presumption that land which sells for a price three or more times the agricultural assessment is not being used for agricultural purposes. § 193.461(3)(c). Typically, this presumption is used to remove the agricultural classification from a parcel that already is so classified and recently has sold at a price suggesting imminent development. See, e.g., Champion Realty Corp. (Fla.) v. Burgess, 541 So.2d 615 (Fla. 1st DCA 1989), review denied, 549 So.2d 1013 (Fla. 1989). In this case, the trust asked for the classification more than a decade after it purchased the undeveloped land in anticipation of commercial development. As in Fisher, the development's failure and the owner's decision to place the land into legitimate agricultural use is a special circumstance that overcomes the presumption. 371 So.2d 496.
Under the catch-all "other factors" to be considered in section 193.461(3)(b)7, the Property Appraiser argues that zoning is a factor barring agricultural classification in *197 this case. The fact that the trust arranged for this property to be classified as a planned development at an earlier time or that it is currently zoned for residential development is not dispositive. This is not a case in which the land was rezoned from agricultural status to nonagricultural status at the owner's request. § 193.461(4)(a)3, Fla. Stat. (1991). See Harbor Ventures, Inc. v. Hutches, 366 So.2d 1173 (Fla. 1979). There is no indication that the City classified this undeveloped land as agricultural in 1980. The trust did not request the City's most recent zoning change. Moreover, the City submitted a letter in support of the trust's requested agricultural classification, indicating that the tree farm is an appropriate use for this land under RD zoning because the trust is not selling plants at that location to the public. Thus, even if the presumption concerning a change in zoning exists in this case, Mr. Kirby has overcome that presumption. Markham v. Fogg, 458 So.2d 1122 (Fla. 1984).
Finally, the Property Appraiser argues that a lack of profitability is an "other factor" precluding the agricultural assessment. As in earlier cases, the Property Appraiser argues that a "bona fide agricultural purpose" requires a "good faith commercial agricultural use of the land," § 193.461(3)(b), and that good faith equates to profitability. It is now well established that a good faith commercial agricultural use does not necessitate a profit by the landowner. Roden v. K & K Land Management, Inc., 368 So.2d 588 (Fla. 1978); Fisher, 371 So.2d 496; Walden v. Tuten, 347 So.2d 129 (Fla. 2d DCA 1977), cert. denied, 355 So.2d 518 (Fla. 1978). The trust's evidence establishes that this venture is not a sham and has a profit motive. The fact that the interrelated entities transfer trees from the trust to the other corporations without creating income for the trust does not eliminate the profit motive underlying this venture.
Affirmed.
DANAHY, A.C.J., and SCHOONOVER, J., concur.
NOTES
[1] The Lee County Tax Collector brought a separate appeal, case number 94-00067, which was consolidated with this case.
[2] Mr. Kirby also filed an application for agricultural classification in 1993. The trial court granted a summary judgment in his favor based on the earlier case. The Lee County Property Appraiser's appeal of this summary judgment, case number 94-03139, is also consolidated with this appeal.
[3] Section 193.461(3)(b), in its entirety, states:

193.461 Agricultural lands; classification and assessment. 
... .
(b) Subject to the restrictions set out in this section, only lands which are used primarily for bona fide agricultural purposes shall be classified agricultural. "Bona fide agricultural purposes" means good faith commercial agricultural use of the land. In determining whether the use of the land for agricultural purposes is bona fide, the following factors may be taken into consideration:
1. The length of time the land has been so utilized;
2. Whether the use has been continuous;
3. The purchase price paid;
4. Size, as it relates to specific agricultural use;
5. Whether an indicated effort has been made to care sufficiently and adequately for the land in accordance with accepted commercial agricultural practices, including, without limitation, fertilizing, liming, tilling, mowing, reforesting, and other accepted agricultural practices;
6. Whether such land is under lease and, if so, the effective length, terms, and conditions of the lease; and
7. Such other factors as may from time to time become applicable.